```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION
```

**JOYCE A. BAKER,**

        Plaintiff,

  vs.                                        **Civil Action 2:11-CV-1030**
                                                  **Judge Smith**
                                                  **Magistrate Judge King**

**COMMISSIONER OF SOCIAL SECURITY,**

        Defendant.

## OPINION AND ORDER

    This action seeks review of the administrative decision denying plaintiff's application for disability insurance benefits. On January 25, 2013, the United States Magistrate Judge recommended that the decision of the Commissioner of Social Security be affirmed and that the action be dismissed. *Report and Recommendation*, Doc. No. 17. This matter is now before the Court on plaintiff's objections to that recommendation. *Plaintiff's Objections to the Report and Recommendation of Magistrate Judge King* ("*Plaintiff's Objections*"), Doc. No. 18. The Court will consider the matter *de novo*. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b).

    The administrative law judge found that plaintiff's severe impairments consist of systemic lupus erythematosus, right carpal tunnel syndrome, a history of left carpal tunnel syndrome and repair, chronic obstructive pulmonary disease (COPD), obesity, tobacco abuse, degenerative disc disease, hypertension, and headaches. *PAGEID* 58. The administrative law judge also found that plaintiff's impairments neither meet nor equal a listed impairment and leave plaintiff with

the residual functional capacity ("RFC") for medium work, as defined in 20 C.F.R. § 404.1567(c). *PAGEID* 61-62. Specifically, the administrative law judge found that plaintiff was able to "lift/carry up to fifty pounds occasionally and twenty-five pounds frequently, stand and/or walk for six hours in an eight-hour day and sit for six hours in an eight-hour day." *PAGEID* 62. In addition, plaintiff "needed to avoid fumes, odors, dusts, gases, and poor ventilation." *Id*. Relying on the testimony of the vocational expert, the administrative law judge found that, through the date that she was last insured, plaintiff was able to perform her past relevant work as a sales clerk. *PAGEID* 66. Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act at any time from March 1, 2006, *i.e.,* her alleged onset date, through June 30, 2006, *i.e.,* the date that she was last insured. *PAGEID* 66-67.

In her *Statement of Errors*, plaintiff challenged the decision of the Commissioner in three respects: (1) the administrative law judge erred in evaluating the opinion of the medical expert who testified at the administrative hearing, (2) the administrative law judge erred in assigning no weight to the opinion of William Shade, M.D., plaintiff's current treating physician, and (3) the administrative law judge erred in omitting an upper extremity limitation from plaintiff's RFC assessment. *Statement of Errors*, Doc. No. 13, pp. 9-13. The Magistrate Judge rejected all those challenges. *Report and Recommendation*. Plaintiff's objections again raise the same challenges. *Plaintiff's Objections*, pp. 2-3.

Plaintiff first challenges the administrative law judge's decision to reject the opinion of the medical expert, Darryl R. Cherdron, M.D.  Dr. Cherdron testified at the October 2009 administrative hearing about, *inter alia*, plaintiff's August 2009 resection of plaintiff's meningiomas, which he described as "very slow growing tumors" that could take years to develop to the point of being incapacitating.  *PAGEID* 122.  According to Dr. Cherdron, "it is not beyond belief" that plaintiff's headaches prior to the lapse of her insured status in June 2006 "could have been related to the meningioma at that time and that would have restricted her concentration and if she was blacking out at the time that would have restricted her ability go [sic] work around machinery and tend to do things like that."  *PAGEID 122-23*.  Dr. Cherdron also noted, however, that the record contained no objective corroboration for plaintiff's testimony that she blacked out prior to June 2006 or that the meningioma existed at that time.  *PAGEID* 123.  However, because meningioma "are slow growing tumors," he could not "exclude the possibility that she did have it at the time and it contributed to her headaches."  *PAGEID* 124.

Plaintiff argues that her meningioma existed prior to the date that she was last insured and "may have contributed to her headaches during that period."  *Plaintiff's Objections*, p. 2.  In rejecting this argument, the Magistrate Judge noted that the "record demonstrates that plaintiff suffered from headaches prior to her date last insured, but does not indicate the severity of plaintiff's headaches or suggest that they limited her functionality in any way.  *See PAGEID* 395 (January 2005), 404 (April 2005), 357 (April 2006)."  *Report and*

3

*Recommendation*, p. 18.  *See also PAGEID* 362-63 (April 2006 treatment for a "muscle contraction headache" that improved with medication). The Magistrate Judge concluded that, even if the meningioma existed prior to plaintiff's date last insured and caused her headaches, "the mere existence of meningioma and the fact that plaintiff experienced headaches during that period do not, by themselves, require a conclusion that plaintiff experienced resulting work limitations." *Id*. (citing *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition.")).  This Court agrees with that determination; regardless of the etiology of plaintiff's headaches, there is simply no evidence in the record to support a limitation of function based on headaches.[1]  Accordingly, the administrative law judge did not err in evaluating Dr. Cherdron's testimony.

Plaintiff next argues that the administrative law judge erred in assigning no weight to the opinion of Dr. Shade, plaintiff's treating physician since August 3, 2006.  *Plaintiff's Objections*, p. 3.  In December 2008, *i.e.,* more than two (2) years after the lapse of plaintiff's insured status,  Dr. Shade opined that plaintiff could stand/walk for two hours in an eight hour day and sit for eight hours in an eight hour day; plaintiff could lift up to ten pounds, but was limited in her ability to push and pull and to engage in fine manipulation; plaintiff could finger occasionally, but was able to handle, reach, and feel constantly.  *PAGEID* 485, 487.  According to

---

[1] Plaintiff testified that she experienced blackouts from headaches.  *See PAGEID* 116-17.  She has not, however, challenged the administrative law judge's finding that her testimony was not credible.

Dr. Shade, plaintiff could not sustain full-time work activity. *PAGEID* 486, 489-92.

Plaintiff argues that, although she did not begin treating with Dr. Shade until after her date last insured and although Dr. Shade specifically stated that he was not able to comment on plaintiff's issues before that date, "it is reasonable to infer that the limitations given by Dr. Shade in his report accurately describe" plaintiff's limitations. *Plaintiff's Objections*, p. 3.  In rejecting plaintiff's argument, the Magistrate Judge found that the administrative law judge "provided specific reasons for assigning no weight to Dr. Shade's opinion" and was "sufficiently specific as to the . . . reasons for assigning that weight." *Report and Recommendation*, pp. 14-15.  The Magistrate Judge further found that "the administrative law judge's reasons for assigning no weight to Dr. Shade's opinion are supported by substantial evidence." *Id*. at p. 15. This Court agrees with that determination.  Notably, Dr. Shade's August 3, 2006 treatment notes do not support his December 2008 opinion of disability.  *See PAGEID* 428-29 (noting that plaintiff was able to walk under her own power, was under no acute distress, did not appear acutely ill, had a supple neck with a full range of motion, and no pitting edema in her extremities).  There is nothing in the August 3, 2006 treatment notes that suggests a limitation in plaintiff's ability to walk, stand, sit, push, pull, or perform fine manipulation at that time.  Accordingly, the administrative law judge did not err in evaluating Dr. Shade's opinion.

5

Finally, plaintiff argues that the administrative law judge erred in omitting an upper extremity limitation from plaintiff's RFC assessment. *Plaintiff's Objections*, pp. 2-3. Specifically, plaintiff argues that she "has a history of bilateral carpel tunnel syndrome," she "testified as to the ongoing symptoms relating" to carpel tunnel syndrome, and Dr. Cherdron testified that plaintiff "had limitations in the use of her left hand and probably could not have done fine manipulation with it." *Id*. In rejecting this argument, the Magistrate Judge acknowledged that plaintiff has a history of carpel tunnel syndrome. *Report and Recommendation*, p. 20. Nevertheless, the Magistrate Judge found that the administrative law judge's RFC determination enjoys substantial support in the record. *Id*. As noted by the Magistrate Judge, *see id*., a February 2004 EMG did not detect "any definite abnormalities" in plaintiff's left wrist; *PAGEID* 415; right carpal tunnel syndrome was diagnosed in 2004, but Dr. Cherdron did not suggest that plaintiff was limited in the use of her right hand; *PAGEID* 121-28; and plaintiff continued to work with this condition until March 2006, *PAGEID* 98-101, with no evidence that the condition worsened or required treatment after that date. Thus, there is substantial support in the record for the administrative law judge's determination in this regard.

Plaintiff's objections raise the same arguments presented in her *Statement of Errors* and considered by the Magistrate Judge. The Court has carefully considered those objections, as well as the entire record in this action. For the foregoing reasons and for the reasons

6

articulated in the *Report and Recommendation*, the Court concludes that those objections are without merit.

*Plaintiff's Objections*, Doc. No. 18, are **OVERRULED**.  The *Report and Recommendation*, Doc. No. 17, is **ADOPTED AND AFFIRMED.**  The decision of the Commissioner of Social Security is **AFFIRMED**.  This action is hereby **DISMISSED**.

The Clerk shall enter **FINAL JUDGMENT** pursuant to Sentence 4 of 42 U.S.C. § 405(g).

      *s/George C. Smith*
**George C. Smith, Judge**
**United States District Court**

7